(51 Misc. Rep. 600.)

HALL v. FRITH.

(Supreme Court, Appellate Term.　November 14, 1906.)

1. PARTIES—PLAINTIFFS—REAL PARTY IN INTEREST—TROVER AND CONVERSION—PLAINTIFF'S TITLE.

Plaintiff, after purchasing a stock of goods, sold it to a third person for a specified sum, and after the third person had taken away a part of the stock he was prevented from taking the remainder by a levy under an execution against plaintiff's vendor. For the goods which plaintiff's vendee succeeded in taking away he paid plaintiff a less sum than the contract price in full settlement. *Held*, that plaintiff was the real party in interest in an action by him against the sheriff for conversion of the goods levied on.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, §§ 6–8.]

2. FRAUDULENT CONVEYANCES—NOTICE OF VENDOR'S INTENT—EVIDENCE—SUFFICIENCY.

Laws 1897, p. 511, c. 417, § 24, in relation to fraudulent conveyances, protects the title of a purchaser for valuable consideration without notice of the fraudulent intent of the vendor. *Held*, on an issue whether a sale of goods was fraudulent as against a creditor, that the evidence showed that the purchaser had notice of the vendor's fraudulent intent.

3. SAME—REMEDIES OF CREDITOR.

A creditor, as against whom a sale is void for fraud, under Laws 1897, p. 511, c. 417, may levy on the goods sold without bringing any action to have the bill of sale set aside.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 660–662.]

4. SAME—FRAUDULENT INTENT OF VENDOR—EVIDENCE.

Laws 1897, p. 511, c. 417, § 24, makes every transfer of an interest in personal property void, as against creditors, where made with the intent to hinder, delay, or defraud creditors of their lawful demands. *Held*, that where a firm sold all their assets, knowing that a creditor had commenced an action against them for a just debt and was about to obtain judgment, the sale was within the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 169–175.]

Appeal from Municipal Court, Borough of Manhattan, Fourteenth District.

Action by James Hall against Thomas Frith. From a judgment in favor of plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before GILDERSLEEVE, DUGRO, and DOWLING, JJ.

Arthur S. Tompkins, for appellant.

Richard B. Aldcroft, Jr., for respondent.

GILDERSLEEVE, J. For some time previous to January 24, 1906, the firm of Crittenden & Ogden had been engaged in carrying on a retail grocery business at Spring Valley, Rockland county, N. Y. They became financially embarrassed in January, 1906. On the 18th of said month the firm of Burton, Davis & Co. commenced a suit against them to recover money which said Crittenden & Ogden owed to said firm of Burton, Davis & Co. On January 20, 1906, a salesman from the firm of L. B. Miller & Co. called on Crittenden & Ogden and threatened to press their claim for money owing by said Crittenden & Ogden to said L. B. Miller & Co. The plaintiff, who had been having business relations with Crittenden & Ogden for some time, called on them on January 20, 1906, to try to collect a bill which they owed to Seaman Bros., of which firm plaintiff was a salesman. The plaintiff himself, however, was neither a creditor nor a debtor of Crittenden & Ogden. On January 22, 1906, he called again and took an inventory, at night, of their stock of groceries, and on the same night bought the entire stock of goods, together with a horse and wagon, belonging to said firm, for which he paid them $175, which sum he claims to have paid in cash. The following night—i. e., that of January 23, 1906—he agreed to sell the entire stock of groceries, but not the horse and wagon, to one Rieber, at the agreed price of $175. On the morning of the following day Rieber came with a horse and truck and began loading the groceries onto said truck. After he had got part of the stock loaded onto his truck he took it to his store at Nanuet. The rest of the stock he was prevented from taking away by the defendant, a constable, who made a levy on the same under an execution duly issued to him upon a judgment obtained on said January 24, 1906, by said Burton, Davis & Co. against said Crittenden & Ogden. For the goods which Rieber had succeeded in taking away he (the said Rieber) paid plaintiff $80. Rieber was willing and ready to pay the balance of the $175 if he could get the rest of the goods, but these goods were subsequently duly sold at public auction by defendant to satisfy said judgment and execution. The plaintiff brought this action in conversion against defendant for the value of the goods levied upon, and the justice gave judgment for plaintiff for $161 damages and $17 costs, making in all $178. Defendant appeals.

In the first place, we shall dispose of the appellant's contention that the plaintiff is not the real party in interest, by reason of his sale to Rieber. This contention we find defective, for the reason that there was no delivery of said goods so levied upon to Rieber, who only paid for the portion actually delivered to him, for which, as we have seen, he gave plaintiff $80, apparently in full settlement. We are of opinion, however, that the sale to plaintiff by Crittenden & Ogden was

null and void as against Burton, Davis & Co. for fraud. Section 24, c. 417, p. 511, of the Laws of 1897, provides as follows, viz.:

"Every transfer of any interest in personal property, or the income thereof, and every charge on such property or income, made with the intent to hinder, delay or defraud creditors, or other persons, of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced or decree or judgment suffered, with such intent, is void as against every person so hindered, delayed or defrauded."

The testimony clearly shows that Crittenden & Ogden made the sale to plaintiff with the intent to hinder, delay, and defraud their creditors, including said Burton, Davis & Co. They made this sale to plaintiff, knowing that they thereby disposed of all their assets, and knowing that Burton, Davis & Co. had begun an action against them for a just indebtedness and were about to obtain a judgment therefor. The above quoted statute, however, is somewhat modified by section 29 of the same act, which reads as follows, viz.:

"This article does not affect or impair the title of a purchaser or incumbrancer for a valuable consideration, unless it appears that such purchaser or incumbrancer had previous notice of the fraudulent intent of his immediate vendor, or of the fraud rendering void the title of such vendor."

If a vendee shows that he has paid a valuable consideration for the property transferred to him, proof of a fraudulent intent on the part of the vendor alone is not sufficient; but there must be proof, also, of a fraudulent intent on the part of the vendee, or that he had notice of the vendor's fraudulent intent. Starin v. Kelly, 88 N. Y. 421; Bailey v. Fransioli, 101 App. Div. 143, 91 N. Y. Supp. 852; Gilmour v. Colcord, 96 App. Div. 363, 89 N. Y. Supp. 689; Greenwald v. Wales, 174 N. Y. 144, 66 N. E. 665. The plaintiff herein swears without contradiction that he paid a valuable consideration for the property transferred to him by Crittenden & Ogden. Assuming that there is no sufficient proof of a fraudulent intent on plaintiff's part, making him a participator in the fraud, we think it must be held that he did have notice of the fraudulent intent of Crittenden & Ogden. The proof of notice on the part of the purchaser of the fraudulent intent of the vendor, when it is necessary to establish it, need not be direct and positive; but such notice may be proved, like any other facts in the case, by circumstances and proper and legitimate inferences to be drawn from the whole transaction. Starin v. Kelly, supra. A similar principle applies here to that which was stated by Judge Selden in the case of Williamson v. Brown, 15 N. Y. 354, and cited with approval in Anderson v. Blood, 152 N. Y. 285, 46 N. E. 493, 57 Am. St. Rep. 515, Kingsland v. Fuller, 157 N. Y. 507, 52 N. E. 562, and Gilmour v. Colcord, 96 App. Div. 361, 89 N. Y. Supp. 690, as follows, viz.:

"Where a purchaser has knowledge of any facts sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior rights, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a bona fide purchaser. This presumption, however, is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his part."

In the case at bar there is no proof of plaintiff's failure to learn of Crittenden & Ogden's fraudulent intent, after the exercise of proper diligence on his part, while he certainly had knowledge sufficient to put him on inquiry, if not actual notice, of the vendor's fraud. He will not deny the testimony of White that he (plaintiff) told said White that he (plaintiff) saw how things were going and bought the goods to save himself, as he would lose about $50 in commissions if the bill that Crittenden & Ogden owed plaintiff's employers was not paid, and that he jumped in to save himself. Plaintiff himself swears:

"I knew from their financial condition that they could not continue in business long. I knew they were in a very bad financial condition."

He knew that he was purchasing the entire stock, together with the horse and wagon, and, to say the least, had reason to suppose that there were creditors who were thereby left unprotected. The plaintiff claims that defendant or the judgment creditors should have brought an action to have the bill of sale set aside, instead of disregarding it and levying on the property. There is no force in this contention, as the bill of sale was void, and a nullity, as against the creditors, for fraud, under the express provisions of the statute above quoted.

The judgment is reversed, and a new trial granted, with costs to appellant to abide the event.

DOWLING, J., concurs. DUGRO, J., concurs in the result.